# UNITED STATES DISTRICT COURT

## WESTERN DISTRICT OF LOUISIANA

## LAFAYETTE-OPELOUSAS DIVISION

| | |
|---|---|
| **MARGARET COMEAUX** | **CIVIL ACTION NO. 05-0077** |
| **VS.** | **JUDGE MELANÇON** |
| **COMMISSIONER OF SOCIAL SECURITY** | **MAGISTRATE JUDGE METHVIN** |

### REPORT AND RECOMMENDATION

Before the court is an appeal of the Commissioner's finding of non-disability.
Considering the administrative record, the briefs of the parties, and the applicable law, **IT IS
RECOMMENDED** that the Commissioner's decision be **AFFIRMED.**

### *Background*

Born on February 2, 1952, Margaret Comeaux ("Comeaux") is a 54-year-old claimant
with a high school education. (Tr. 373). Comeaux has worked in the past as a laborer at a plant
nursery, a shrimp packer, and a nurse's aide. (Tr. 14). She last worked on March 4, 1995, the
date she was injured on the job while working as an aide in a nursing home. Comeaux was
lifting a patient from a chair and injured her lower back. On October 18, 1997, Comeaux was
found to be disabled and entitled to disability and SSI benefits with an onset date of March 4,
1995. Subsequently, Comeaux's case was reviewed for the purpose of determining whether her
disability continued, and on June 7, 2002, a Notice of Disability Cessation letter was sent to
Comeaux advising that her disability benefits were terminated as of June 1, 2002 due to medical
improvement. (Tr. 164-66). Comeaux requested reconsideration and an administrative hearing
was held on May 4, 2004. On October 26, 2004, the ALJ issued a decision finding that as of
June 1, 2002, Comeaux was no longer disabled because her condition had medically improved to

the extent that she could perform a significant number of jobs in the economy. (Tr. 21). The Appeals Council denied review, making the ALJ's decision the final decision of the Commissioner from which Comeaux now appeals.

### *Assignment of Errors*

Comeaux raises two errors on appeal: (1) the ALJ failed to find that she is disabled pursuant to Listing 1.05; and (2) the ALJ failed to property assess her credibility.

### *Standard of Review*

The court's review is restricted under 42 U.S.C. §405(g) to two inquiries: (1) whether the Commissioner's decision is supported by substantial evidence in the record; and (2) whether the decision comports with relevant legal standards. Carey v. Apfel, 230 F.3d 131, 136 (5th Cir. 2000); Anthony v. Sullivan, 954 F.2d 289, 292 (5th Cir.1992); Greenspan v. Shalala, 38 F.3d 232, 236 (5th Cir. 1994). Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. Carey, 230 F.3d at 136; Anthony, 954 F.2d at 292; Carrier v. Sullivan, 944 F.2d 243, 245 (5th Cir. 1991). The court may not reweigh the evidence in the record, nor substitute its judgment for that of the Commissioner, even if the preponderance of the evidence does not support the Commissioner's conclusion. Carey, 230 F.3d at 136; Johnson v. Bowen , 864 F.2d 340, 343 (5th Cir.1988). A finding of no substantial evidence is appropriate only if no credible evidentiary choices or medical findings exist to support the decision. Johnson, 864 F.2d at 343.

In the Benefits Review Act of 1984, 42 U.S.C. § 423(f), Congress established specific standards for the termination of disability benefits. Pursuant to the standards, the Secretary may terminate disability benefits if substantial evidence demonstrates that: (A) there has been any

medical improvement in the individual's impairment or combination of impairments (other than medical improvement which is not related to the individual's ability to work), and (B) the individual is now able to engage in substantial gainful activity. *See* §423(f)(1); Griego v. Sullivan, 940 F.2d 942, 944 (5ᵗʰ Cir.1991). The burden of proof lies with the Secretary in termination proceedings. Waters v. Barnhart, 276 F.3d 716, 718 (5ᵗʰ Cir. 2002); Griego v. Sullivan, 940 F.2d 942, 944 (5ᵗʰ Cir.1991).

The first part of the evaluation process focuses on medical improvement. The implementing regulations define a medical improvement as "any decrease in the medical severity of your impairment(s) which was present at the time of the most recent favorable medical decision that you were disabled or continued to be disabled." 20 C.F.R. § 404.1594(b)(1). A determination of medical improvement "must be based on changes (improvement) in the symptoms, signs, and/or laboratory findings associated with your impairment(s)." A medical improvement is only related to an individual's ability to work "if there has been a decrease in the severity ... of the impairment(s) present at the time of the most recent favorable medical decision and an increase in your functional capacity to do basic work activities." 20 C.F.R. § 404.1594(b)(3).

The second part of the evaluation process relates to ability to engage in substantial gainful activity. Here the implementing regulations incorporate many of the standards set forth in the regulations governing initial disability determinations. See 20 C.F.R. § 404.1594(b)(5) and (f)(7). The difference is that the ultimate burden of proof lies with the Secretary in termination proceedings. Griego v. Sullivan, 940 F.2d at 944. In evaluating the ability to engage in substantial gainful activity, the Secretary considers, first, whether the claimant can perform past

relevant work and, if not, whether the claimant can perform other work. 20 C.F.R. §§

404.1594(f)(7) and (f)(8).

In determining whether a claimant has regained the capacity to perform substantial

gainful activity, the Secretary uses an eight-step sequential analysis:

> 1.     If a claimant is engaged in substantial gainful activity,
> disability will be found to have ended regardless of the medical
> findings.
>
> 2.     If the claimant's impairment meets the severity of an
> impairment listed in Appendix I, his disability will be found to
> continue.
>
> 3.     If the impairment does not meet the Appendix 1 listings,
> whether there has been medical improvement as shown by a
> decrease in medical severity must be determined.  If so, Step 4 is
> considered.  If there has been no decrease in medical severity, there
> has been no medical improvement, and Step 5 is considered next.
>
> 4.     If medical improvement is found, whether the improvement
> is related to the claimant's ability to do work must be considered.
> To make this determination, whether or not there has been an
> increase in the residual functional capacity based on the
> impairment that was present at the time of the most recent favor-
> able medical determination must be considered.
>
> 5.     If it is found at Step 3 that there has been no medical
> improvement or at Step 4 that the medical improvement was not
> related to the claimant's ability to work, a determination as to
> whether the exceptions apply must be made.  If none apply,
> disability will be found to continue.  If one of the first group of
> exceptions to medical improvement applies, Step 6 is considered.
> If an exception in the second group of exceptions to medical
> improvement applies, the claimant's disability will be found to
> have ended.[1]

---

[1] The second group of exceptions to medical improvement may be considered at any point in this process.
They include:
   (1)  A prior determination was fraudulently obtained;
   (2)  The claimant does not cooperate with the SSA;

6.    If medical improvement is shown to be related to the claimant's ability to do work or if one of the first group of exceptions to medical improvement applies, whether all the claimant's current impairments in combination are severe must be determined.  The evidence shows that the current impairments in combination do not significantly limit the claimant's physical or mental abilities to do basic work activities, the impairments will not be considered severe and the claimant will no longer be considered disabled.

7.    If the impairment is severe, and a claimant can still perform his past work, disability will be found to have ended.

8.    If a claimant's impairment prevents him from performing his past work, other factors including his age, education, past work experience, and residual functional capacity are considered to determine if other work can be performed.

20 CFR Sec. 404.1594(f)(1-8)(1993).

### *The ALJ's Decision*

In the case at bar, the ALJ noted that Comeaux was found to be disabled as of March 4, 1995, and that she has not engaged in any substantial gainful activity at any time since that date. The ALJ then found that Comeaux suffers from the following severe impairments:  hypertension, chronic back pain, chest pains, diabetes mellitus, and heart and lumbar spine impairments.  The ALJ concluded that the impairments, either singly or in combination, did not meet a listed impairment.  Accordingly, the ALJ turned to whether Comeaux's condition has medically improved since the last time her case was reviewed and it was determined that she was disabled. The ALJ compared the medical evidence available at the time of the previous disability

---

(3)  The SSA was unable to find the claimant; and
(4)  The claimant fails to follow prescribed treatment.

20 C.F.R. §404.1594(e)(1-4).

determination to the current medical evidence and concluded that Comeaux has medically

improved such that she now has the residual functional capacity to perform light work and is,

therefore, no longer disabled.  In so finding, the ALJ noted:

> When originally awarded benefits, the claimant had a back disorder and leg pain.
> When evaluated on March 14, 1995 the claimant had a positive straight leg raise
> in both legs, 15 degree forward flex and zero degree extend and loss of sensation
> to pinprick.  The consultative examination in May 2002 noted a normal gait,
> negative straight leg raise bilaterally, a normal sensory examination and a full
> range of motion of the lumbar spine.  The Administrative Law Judge finds that
> there has been medical improvement in the claimant's back condition and leg
> pain.

(Tr. 15).

After a review of the entire record and the briefs of the parties, and pursuant to 42 U.S.C.

§405(g), the undersigned concludes that the Commissioner's finding of non-disability as of

June 1, 2002 is supported by substantial evidence in the record.

# I.    Listing 1.04 and Residual Functional Capacity

Comeaux contends that the ALJ erred in concluding that she has medically improved,

arguing that she satisfies "one of the listed impairments in Section 1.05" of Appendix I.  Section

1.05 refers to amputations, which are not relevant in this case.  The undersigned assumes that

Comeaux intends to argue that she satisfies the requirements of Listing 1.04 for disorders of the

spine.  Listing 1.04 states:

> **1.04 Disorders of the spine** (e.g., herniated nucleus pulposus, spinal
> arachnoiditis, spinal stenosis, osteoarthritis, degenerative disc disease, facet
> arthritis, vertebral fracture), resulting in compromise of a nerve root (including the
> cauda equina) or the spinal cord. With:
>
> > A. Evidence of nerve root compression characterized by neuro-anatomic
> > distribution of pain, limitation of motion of the spine, motor loss (atrophy with
> > associated muscle weakness or muscle weakness) accompanied by sensory or
> > reflex loss and, if there is involvement of the lower back, positive straight-leg

raising test (sitting and supine);
or
B. Spinal arachnoiditis, confirmed by an operative note or pathology report of
tissue biopsy, or by appropriate medically acceptable imaging, manifested by
severe burning or painful dysesthesia, resulting in the need for changes in position
or posture more than once every 2 hours;
or
C. Lumbar spinal stenosis resulting in pseudoclaudication, established by findings
on appropriate medically acceptable imaging, manifested by chronic nonradicular
pain and weakness, and resulting in inability to ambulate effectively, as defined in
1.00B2b.

20 C.F.R. Pt. 220, App. 1, Listing 1.04, Social Security Administration.

Comeaux does not specify which portion of Listing 1.04 she allegedly satisfies. After review of the entire record, the undersigned concludes that the medical records do not support a finding that Comeaux satisfies any of them.

Medical records show that by September 2000, three years following her award of benefits, Comeaux was noted by Dr. Juan Pastor-Cervantes, an internist, to have a normal gait, range of motion, and muscle strength. (Tr. 327, 277, 273-75, 336, & 338). In February 2002, four months prior to her cessation of benefits, Dr. John R. Budden, an orthopedic surgeon, examined Comeaux and reported that she was in no acute distress, could heel-to-toe walk without difficulty, showed no gross muscle spasm or weakness, and had full range of motion of her lumbar spine. (Tr. 284).

At the request of Disability Determinations Services, Comeaux was examined by Dr. Kenneth Ritter, an internist, on May 7, 2002. Dr. Ritter reported that Comeaux's gait, range of motion, and deep tendon reflexes were all normal, and that her straight-leg raising tests were negative. (Tr. 261). Dr. Ritter concluded that despite complaining of chronic back pain, Comeaux's back examination was normal. (Tr. 262). In a form entitled "Medical Assessment of

Ability to Do Work-Related Activities," Dr. Ritter reported that Comeaux has no lifting/carrying limitations; no standing/walking limitations; no sitting limitations; can frequently climb, stoop, kneel, balance, crouch, and crawl; and has no other physical or environmental limitations. (Tr. 265-66).

On June 11, 2003, Dr. Budden reported that Comeaux had deep-tendon reflexes of 1+ symmetrically throughout both lower extremities; negative straight leg raising tests; no gross muscle weakness of any of the major muscle groups of either lower extremity; and a normal sensory exam. (Tr. 281). X-rays taken at that time shows probable degenerative disc disease at L2-3 with associated bone spurring at that level. (Tr. 282). An examination in February 2004 by Dr. Budden showed essentially similar results, except that Dr. Budden noted that no muscle spasms were palpable. (Tr. 290). Dr. Budden noted that, given her largely normal examination, he was "at a loss" to explain her symptoms and he ordered a lumbar MRI. (Tr. 291). An MRI conducted on March 23, 2004 showed a small left paracentral disc protrusion at the L2-3 level that was not causing any significant spinal stenosis. (Tr. 299). On March 31, 2004, Dr. Budden commented on the MRI results, stating that the small disc protrusion "was not producing any neuroforaminal encroachment or spinal stenosis." (Tr. 307). Dr. Budden stated in his report that he was referring Comeaux to Dr. Louis Blanda, an orthopedic surgeon, to determine whether she is a surgical candidate. (Id.).

Comeaux argues that she is a candidate for back surgery, but this argument is unsupported by the record. The record shows only that Dr. Budden intended to refer Comeaux to Dr. Blanda to determine whether surgery would be an option to address her back pain, because Dr. Budden was "at a loss" to explain her symptoms given that a recent MRI showed only a small

disc protrusion that did not cause any spinal stenosis. The record is silent as to whether Comeaux ever saw Dr. Blanda after that time, and there is no report in the record stating that Dr. Blanda believed that Comeaux required surgery.

Considering the medical evidence as a whole, the undersigned concludes that Comeaux fails to establish that she meets any of the requirements of any section of Listing 1.04. Clearly, Comeaux does not satisfy the requirements of either Listing 1.04(A) for nerve root compression or Listing 1.04(B) for spinal arachnoiditis. Furthermore, the evidence shows that Comeaux does not satisfy the requirements of Listing 1.04(C) for lumbar spinal stenosis resulting in pseudoclaudication, as there is no evidence in the record that Comeaux is unable to ambulate effectively as defined in the regulations.

Considering the foregoing, the undersigned concludes that this claim is without merit.[2]

## 2.      **Credibility and Complaints of Pain**

Comeaux also contends that the ALJ failed to properly assess her credibility regarding her complaints of pain.

---

[2] Although the Commissioner addresses in his brief the issue of whether Comeaux has a disabling heart condition, the record shows that Comeaux did not brief this issue or specifically present it as an error on appeal. Rather, Comeaux states in her brief that her herniated disc is a significant impairment, and that her "diabetes, heart disorder, and hypertension should also be given some weight in the process." Comeaux fails to even identify what "heart disorder" should be examined by the court or cite to any document in the record as support for a contention that she has a disabling heart condition. It is well-settled that the claimant, not the Commissioner, has the burden of proving that his impairment is of listing-level severity. Masterson v. Banrhart, 309 F.3d 271-72 (5th Cir. 2002). Furthermore, an appellant, claiming error by the district court as to factual determinations, must provide the court with the essential references to the record to carry his burden of proving error. Forsyth v. Barr, 19 F.3d 1527 (5th Cir. 1994) ("It is not Court of Appeals' duty on appeal from grant of summary judgment to sift through record in search of evidence to support party's opposition to summary judgment."); see also S.E.C. v. Thomas, 965 F.2d 825, 827 (10th Cir. 1992) ("We therefore decline to 'sift through' the record in search of Defendant's contentions of error and hereby affirm the district court."); Sil-Flo, Inc. v. SFHC, Inc., 917 F.2d 1507, 1514 (10th Cir.1990) (absent references to the record, we defer to trial court's rulings). For the foregoing reasons, the undersigned concludes that Comeaux has failed to properly support any claim that she has a disabling heart condition.

The law of the Fifth Circuit is that pain reaches the level of a disabling complaint when such pain is constant, unremitting, and wholly unresponsive to therapeutic treatment.  Francois v. Commissioner of Social Sec., 2001 WL 322194, *11 (E.D. La. 2001), citing Falco v. Shalala, 27 F.3d 160, 163 (5th Cir. 1994).  As to a determination of whether a claimant's pain is disabling, the first consideration is whether the objective medical evidence shows the existence of an impairment which could reasonably be expected to produce the pain alleged.  Francois, 2001 WL 322194, at *11.  Generally, medical factors that indicate disabling pain include limitation of range of motion, muscle atrophy, strength deficits, sensory deficits, reflex deficits, weight loss or impairment of general nutrition, noticeable swelling, and muscle spasm.  Id.  Other "medical signs" that support a finding that a claimant is disabled include a physician's diagnosis based upon history, symptoms and response to medication.

When there are conflicts between subjective complaints of pain and objective evidence, the ALJ is to evaluate the claimant's credibility.  Carrier v. Sullivan, 944 F.2d 243, 247 (5th Cir. 1991).  "How much pain is disabling is a question for the ALJ since the ALJ has primary responsibility for resolving conflicts in the evidence."  Carrier, 944 F.2d at 246.  This court may not reweigh the evidence.  Id., citing Villa v. Sullivan, 895 F.2d 1019, 1021 (5th Cir.1990).

In the instant case, the ALJ concluded that Comeaux's complaints of severe, disabling pain are "highly exaggerated."  (Tr. 19).  In reaching this conclusion, the ALJ relied upon the following evidence: virtually all of Comeaux's diagnostic test results and the results of physical examinations have been essentially normal; Comeaux has been treated fairly conservatively throughout her treatment regime; Comeaux's last prescription for pain was Talacin, a narcotic-aspirin combination drug used for the relief of mild to moderate pain; and Comeaux does not

have the "stigmata frequently observed in a patient who suffers constant, unremitting pain that is totally unresponsive to therapeutic measures," such as drawn features, significant weight loss, or poor overall health. (Tr. 18-19).

The undersigned concludes that the ALJ's findings are supported by the record. Although Comeaux may indeed suffer from back pain, the record does not support a finding that she is totally disabled because of that pain. Indeed, in May 2002, Dr. Ritter placed no restrictions on Comeaux that would prohibit her from doing some work.

For the foregoing reasons, the undersigned concludes that the ALJ's credibility assessment was not erroneous. Therefore, this claim is without merit.

### Conclusion

Considering the foregoing, **IT IS RECOMMENDED** that the ALJ's decision be **AFFIRMED.**

Under the provisions of 28 U.S.C. §636(b)(1)(C) and Fed.R.Civ.P. 72(b), the parties have ten (10) days from receipt of this Report and Recommendation to file specific, written objections with the Clerk of Court. Counsel are directed to furnish a courtesy copy of any objections or responses to the district judge at the time of filing.

**Failure to file written objections to the proposed factual findings and/or the proposed legal conclusions reflected in this Report and Recommendation within ten (10) days following the date of receipt, or within the time frame authorized by Fed.R.Civ.P. 6(b), shall bar an aggrieved party from attacking either the factual findings or the legal**

conclusions accepted by the District Court, except upon grounds of plain error. See

**Douglass v. United Services Automobile Association**, 79 F.3d 1415 (5th Cir. 1996).

Signed at Lafayette, Louisiana, on August 25, 2006.

Mildred E. Methvin
United States Magistrate Judge
800 Lafayette St., Suite 3500
Lafayette, Louisiana 70501
(337) 593-5140 (phone) 593-5155 (fax)